1  Michael R. Totaro 102229
   Totaro & Shanahan
2  P.O. Box 789
   Pacific Palisades, CA 90272
3  310 572 0276 (v) 310 496 1260 (f)
   Tsecfpacer@aol.com
4  www.Totaroandshanahan.com

5

6

7                    **UNITED STATES BANKRUPTCY COURT**

8           **CENTRAL DISTRICT OF CALIFORNIA, SANTA ANA DIVISION**

9   In re                              | Bk. No. 8:14-bk-13115-ES

10  GENUTEC BUSINESS SOLUTIONS, INC.   | In a Case Under Chapter
                                        | 11 of the Bankruptcy Code
11          Debtor In Possession,      | (11 U.S.C. § 1101 et seq.)

12                                      | **Proposed First Amended  Chapter 11
                                        | Plan of Reorganization**
13
                                        | **Disclosure Statement Hearing**
14
                                        | Date:    June 4, 2015
15                                      | Time:    10:30 am
                                        | Ctrm:    5A  411 W. Fourth St.
16                                      |              Santa Ana, CA

17                                      | **Plan Confirmation Hearing
                                        | See Disclosure Statement for
18                                      | Voting and Objecting Procedures**

19                                      | Date:    August 18, 2015
                                        | Time:    10:30 am
20                                      | Ctrm:    5A 411 W. Fourth St.
                                        |              Santa Ana, CA
21

22

23

24

25

26

27

28

**TABLE OF CONTENTS**

I.    INTRODUCTION . . . . . . . . . . . . . . . . . . . . .    1

II.   CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS .    1

      A.    General Overview . . . . . . . . . . . . . . .    1
      B.    Unclassified Claims . . . . . . . . . . . . . .    1
            1.    Administrative Expenses . . . . . . . . . .    1
            2.    Priority Tax Claims . . . . . . . . . . .    3
      C.    Classified Claims and Interests . . . . . . . .    3
            1.    Class 1: Secured Claims . . . . . . . . . .    3
            2.    Class 2: Priority Unsecured Claims . . . .    3
            3.    Class 3: General Unsecured Claims . . . . .    3
            4.    Class 4: Interest Holders . . . . . . . . .    5
      D.    Means of Performing the Plan . . . . . . . . . .    6
            1.    Funding for the Plan . . . . . . . . . .    6
            2.    Post-Confirmation Management . . . . . . .    6
            3.    Disbursing Agent . . . . . . . . . . . . .    6

III.  TREATMENT OF MISCELLANEOUS ITEMS . . . . . . . . . . .    6

      A.    Executory Contracts and Unexpired Leases . . . .    6
      B.    Changes in Rates Subject to Regulatory Commission
            Approval . . . . . . . . . . . . . . . . . . .    6
      C.    Retention of Jurisdiction . . . . . . . . . . .    7

IV.   EFFECT OF CONFIRMATION OF PLAN . . . . . . . . . . . .    7
      A.    Discharge . . . . . . . . . . . . . . . . . . .    7
      B.    Revesting of Property in the Debtor . . . . . .    7
      C.    Modification of Plan . . . . . . . . . . . . .    7
      D.    Post-Confirmation Status Report . . . . . . . .    7
      E.    Quarterly Fees . . . . . . . . . . . . . . . .    7
      F.    Post-Confirmation Conversion/Dismissal . . . . .    8
      G.    Final Decree . . . . . . . . . . . . . . . . .    8
      H.    Pending Litigation and Appeals . . . . . . . . .    8

**I**
**INTRODUCTION**

Genutec Business Solutions, Inc. (Debtor) is the Debtor in a voluntary Chapter 11 bankruptcy case filed on May 16, 2014 under United States Bankruptcy Code section 11 U.S.C. 101 et seq. The document you are reading is the First Amended Chapter 11 Plan ("Plan") proposed by the Debtor who is also the Plan Proponent. Sent to you in the same envelope is the First Amended Disclosure Statement which has been approved by the Court and which is provided to help you understand the Plan.

This is a Plan of Reorganization. In other words. The Proponent seeks to accomplish making payments under the Plan on a monthly basis to satisfy at least a portion of the debts owed to its creditors. Payments will commence on the Effective Date of the Plan which will be 30 days after the order is signed confirming this Plan.

**II.**

**CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS**

**A.    General Overview**

As required by the Bankruptcy Code, the Plan classifies claims and interests in various classes according to their right to priority of payments as provided in the Bankruptcy Code. The Plan states whether each class of claims or interests is impaired or unimpaired. The Plan provides the treatment each class will receive under the Plan.

**B.    Unclassified Claims**:

Certain types of claims are not placed into voting classes; instead they are unclassified. They are not considered impaired and they do not vote on the Plan because they are automatically entitled to specific treatment provided for them in the Bankruptcy Code. As such, the Proponent has not placed the following claims in a class.

**1.    Administrative Expenses**:

Administrative expenses are claims for costs or expenses of administering the Debtor's Chapter 11 case which are allowed under Code section 507(a)(1).  The Code requires that all

administrative claims be paid on the Effective Date of the Plan, unless a particular claimant agrees to a different treatment.

The following lists all of the Debtor's § 507(a)(1) administrative claims and their treatment under the Plan.

**a.    United States Trustee Fees:**

All United States Trustee fees will be paid as they become due within 30 days after the end of each quarter until Debtor is discharged. It is anticipated that the total disbursements under the Plan will be approximately $20,500 per month which is comprised of the payment to the creditors and insurance. Based on this figure the quarterly payment to the United States Trustee should be $650.00 a quarter.

**b.    Legal Fees:**

Debtor has incurred legal fees for General Insolvency Counsel, Totaro & Shanahan and Special Litigation Counsel Candice Bryner. Those fees will be paid on the effective date subject to the procedures set forth below. The creditor's committee has never appointed counsel to represent it.

**c.    Other Fees:**

To the best of Debtor's knowledge there are no other administrative fees.

**d.    Court Approval of Fees Required:**

The Court must rule on all fees listed in this chart before the fees will be owed. For all fees except Clerk's Office fees and U.S. Trustee's fees, the professional in question must file and serve a properly noticed fee application and the Court must rule on the application.  Only the amount of fees allowed by the Court will be owed and required to be paid under this Plan.

As indicated above, the Debtor will need to pay 100% of administrative claims on the Effective Date of the Plan unless the claimant has agreed to be paid later or the Court has not yet ruled on the claim.  As indicated elsewhere in this Disclosure Statement, Debtor, through Rapid Notify, Inc., a wholly owned subsidiary , will deposit or pay directly sufficient cash to make such payments on the Effective Date of the Plan.  The source of this cash will be revenues generated by Rapid from the contracts attached to the First Amended Disclosure Statement as Exhibit A.

**2.      Priority Tax Claims**

There are no priority tax claims.

**C.      Classified Claims and Interests**

**1.      Class 1: Secured Claims:**

Secured claims are claims secured by liens on property of the estate. The following lists all classes containing Debtor's secured pre-petition claims and their treatment under this Plan:

**Class 1a: Seaview Mezzanine Fund, LP POC 9-1 and 9-2**

As noted above, after the filing of the Petition and after and internal audit it was discovered that Seaview is in first position and secured by a first lien and ownership interest of 38.2% of Debtor. It is not impaired as it has no arrangement for ongoing payments on its' investment. If and when Debtor becomes profitable, which presumably will be after the current claims are paid, Seaview would be entitled to share in the profits. Until then it is simply an investor which is not seeing a return on its' initial investment.

**Class 1b. TICC Capital Corp. POC 8**

TICC is in the same position as Seaview except that it holds a second lien and 58.5% ownership interest. It is not impaired as it has no arrangement for ongoing payments on its' initial investment. If and when Debtor becomes profitable, which presumably will be after the current claims are paid, TICC would be entitled to share in the profits. Until then it is simply an investor which is not seeing a return on its' initial investment.

**2.  Class 2: Priority Unsecured Claims:**

There are no claims in this section.

**3.  Class 3: General Unsecured Claims:**

General unsecured claims are unsecured claims not entitled to priority under Code Section 507(a).  The following identifies this Plan's treatment of the class containing all of Debtor's general unsecured claims.  Each of the general unsecured claims will be treated in an identical manner, except for Shulman which because of the contingent nature of the claim is in its' own class. These claims are as follows with their treatment thereafter:

**Class 3a: General Unsecured:**

| | | | |
|---|---|---|---|
| 1. | Hunter | POC 4 | 2,326,661.30 |
| 2. | Taus | POC 7 | 1,117,040.80 |

| | | | |
|---|---|---|---|
| 3. | Merrill | POC 1 | 154,408.56 |
| | | POC 2 | Withdrawn Docket 49 |
| 4. | IPFS Corp | POC 5 | Withdrawn Docket 137 |
| 5. | Stradling | POC 6 | OBJ Withdrawn |
| 6. | Rapid | POC 10 | Withdrawn Docket 161 |

The total of these claims are $3,598,110.16.

Hunter has 64.66% of the total claim.

Taus has 31.04% of the total claim.

Merrill has 04.30% of the total claim.

## TREATMENT OF THE UNSECURED CLASS 3A CLAIMS

Debtor and have agreed to three alternative plans to pay the agreed upon unsecured debt. How much the unsecured creditors will receive depends on the payment at various stages of the proceeding. Each will be set forth:

**Alternative 1:**

This alternative is triggered by Debtor's ability to obtain financing on or before the Effective Date of the Plan. If Debtor should obtain such financing and is able to make a lump sum payment, then on the Effective Date (the 30th day after the signed order confirming the Chapter 11 Plan)  Debtor will make a payment of $750,000.00 to be distributed to Hunter and Taus pro-rata for their undisputed allowed claims which is 20.8%. Merrill will also receive a lump sum payment of 20.8% of its claim which comes to $32,116.98. Following this distribution Debtor will be permitted to file for a final decree, discharge and closure.

**Alternative 2**:

This alternative is triggered by Debtor's inability to pay the $750,000 on the Effective Date. If Debtor cannot obtain the financing to fund a lump sum payment on the Effective Date, Debtor will pay the unsecured creditors $1,251,600.00 over 8 years at $12,500.00 a month with a balloon payment of $51,600 at the end of year 8. All payments to be paid pro-rata according to the above percentages. Under this alternative, including the balloon payment Hunter would receive $809,284.56. Taus would receive $388,496.64. Merrill would receive $53,818.80. Payments are to begin on the Effective Date. (The 30th day after the signed order confirming the Chapter 11 Plan).

**Alternative 3:**

As an incentive to pay the debt early, Debtor and Creditors Taus and Hunter, who control the voting class, have agreed to a schedule of discounts if Debtor is able to accomplish an early pay-off of the debt. If during any of the years following confirmation, Debtor pays the remaining balance in full the following discounts will apply:

Year 1:25%

Year 2: 22%

Year 3: 19%

Year 4: 16%

Year 5: 13%

Year 6: 10%

Year 7:  7%

The Taus and Hunter, who control the voting class, have indicated that each of the above alternatives are acceptable to each of them and should be incorporated into what will be a consensual plan.

**Class 3b:  Special General Unsecured:**

1.    Shulman          POC 3          $4,509,589.06

This claim is segregated into its own class since Shulman has undertaken the collection of the judgment against Johan and Danna on a contingency basis. The court has previously approved the employment of the Shulman firm on a contingency basis. (Docket 63.) Therefore there is no disbursement under the plan that would dilute the disbursement of funds to the remaining unsecured creditors.

**4.    Class 4: Interest Holders**

Interest holders are the parties who hold ownership interest (i.e., equity interest) in the Debtor.  If the Debtor is a corporation, entities holding preferred or common stock in the Debtor are interest holders.  If the Debtor is a partnership, the interest holders include both general and limited partners.  If the Debtor is an individual, the Debtor is the interest holder. The following identifies the Plan's treatment of the Class of interest holders.

**Class 4a:**

Seaview will retain its' 38.2% ownership interest in Debtor and retain its' first position.

**Class 4b:**

TICC will retain its' 58.5% ownership interest in Debtor and retain its' second position.

**Class 4c:**

The minority shareholders will retain their 2.3% ownership interest in Debtor.

**D.    Means of Effectuating the Plan**

**1.  Funding for the Plan**

The plan will be funded by the revenues of Rapid. Payments will be made on a monthly basis pro-rata to the unsecured creditors except that Debtor, in its' sole discretion, may elect to prepay the entire year's payments in December for the upcoming year if funds are available. Rapid Notify, Inc. is a corporation with one Director, Scott Hartman. Mr. Hartman is the Chairman of the Board of Directors of Genutec and thus Rapid is required to do exactly what Mr. Hartman tells it to do. In other words, Rapid only exists to perform at the direction of Mr. Hartman and Genutec. Therefore all funding, ordered by Mr. Hartman of Rapid, must be complied with by Rapid. There is no discretion not to provide funding as needed. *See* Hartman Declaration, *supra,* p. 21 of the First Amended Disclosure Statement.

**2.  Post-Confirmation Management**

The directors of Debtor will continue to manage Debtor post-confirmation.

**3.  Disbursing Agent**

Steven London shall act as the disbursing agent for the purpose of making all distributions provided for under the Plan. The Disbursing Agent shall serve without a bond and shall receive no compensation for distribution services rendered but shall be entitled to reimbursement for out of pocket expenses incurred pursuant to the Plan.

**III.**

**TREATMENT OF MISCELLANEOUS ITEMS**

**A.    Executory Contracts and Unexpired Leases**

Debtor has no contracts or leases to either reject or assume.

**B.    Changes in Rates Subject to Regulatory Commission Approval**

This Debtor is not subject to governmental regulation of rates.

**C.    Retention of Jurisdiction**

The Court will retain jurisdiction to the extent provided by law.

**IV.**

**EFFECT OF THE CONFIRMATION OF PLAN**

**A.    Discharge:**

This Plan provides that upon completion of plan payments Debtor shall be discharged of liability for payment of debts incurred before confirmation of the Plan, to the extent specified in 11 U.S.C. § 1141. However, the discharge will not discharge any liability imposed by the Plan.

**B.    Revesting of Property in the Debtor:**

Except as provided in Section {E.}, and except as provided elsewhere in the Plan, the confirmation of the Plan revests all of the property of the estate in the Debtor.

**C.    Modification of Plan**:

The Proponent of the Plan may modify the Plan at any time before confirmation. However, the Court may require a new disclosure statement and/or revoting on the Plan.

The Proponent of the Plan may also seek to modify the Plan at any time after confirmation only if (1) the Plan has not been substantially consummated and (2) the Court authorizes the proposed modifications after notice and a hearing.

**D.    Post-Confirmation Status Report**:

Within 120 days of the entry of the order confirming the Plan, Plan Proponent shall file a status report with the Court explaining what progress has been made toward consummation of the confirmed Plan.  The status report shall be served on the United States Trustee, the twenty largest unsecured creditors, and those parties who have requested special notice. Further status reports shall be filed every 120 days and served on the same entities.

**E.    Quarterly Fees**:

Quarterly fees accruing under 28 U.S.C. § 1930(a)(6) to date of confirmation shall be paid to the United States Trustee on or before the effective date of the plan.  Quarterly fees accruing under 28 U.S.C. § 1930(a)(6) after confirmation shall be paid to the United States

Trustee in accordance with 28 U.S.C. § 1930(a)(6) until entry of a final decree, or entry of an order of dismissal or conversion to chapter 7.

**F.      Post-Confirmation Conversion/Dismissal**:

A creditor or party in interest may bring a motion to convert or dismiss the case under § 1112(b), after the Plan is confirmed, if there is a default in performing the Plan. If the Court orders, the case converted to Chapter 7 after the Plan is confirmed, then all property that had been property of the Chapter 11 estate, and that has not been disbursed pursuant to the Plan, will revest in the Chapter 7, estate. The automatic stay will be reimposed upon the revested property, but only to   the extent that relief from stay was not previously authorized by the Court during this case.

The order confirming the Plan may also be revoked under very limited circumstances. The Court may revoke the order if the order of confirmation was procured by fraud and if the party in interest brings an adversary proceeding to revoke confirmation within 180 days after the entry of the order of confirmation.

**G.      Final Decree**:

Once the estate has been fully administered as referred to in Bankruptcy Rule 3022, the Plan Proponent, or other party as the Court shall designate in the Plan Confirmation Order, shall file a motion with the Court to obtain a final decree to close the case.

**H.      Pending Litigation and Appeals:**

Upon confirmation of the Chapter 11 plan, all pending litigation in State Court between Taus and Hunter shall be dismissed with prejudice. In addition any appeal involving Taus and Hunter shall be dismissed.

Dated: June 18, 2015

Genutec Business Solutions, Inc.
Name and Identity of Plan Proponent

*Scott Hartman*

Signature of Plan Proponent
Scott Hartman for Genutec Business Solutions, Inc.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

/s/ Michael R. Totaro
Signature of Attorney for Plan Proponent

Michael R. Totaro
Name of Attorney for Plan Proponent

Totaro & Shanahan
Name of Law Firm for Plan Proponent

9

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is: P.O. Box 789, Pacific Palisades, Ca 90272

A true and correct copy of the foregoing document entitled Proposed First Amended Ch 11 Plan. will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.     TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:
Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On June 17, 2015 I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:
    **See Attached**

☒    Service information continued on attached page

**2. SERVED BY UNITED STATES MAIL**:

On June 19, 2015 I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge <u>will be completed</u> no later than 24 hours after the document is filed.

Hon. Erithe A.Smith 411 W. Fourth St. Santa Ana, CA 92701
Genutec Businesss Solutions, Inc. 23046 Avenida de La Carlota #600, Laguna Hills, Ca 92653
Securities and Exchange Commission, Attn. Bankruptcy Counsel, 5670 Wilshire Blvd. 11th Fl., Los Angeles, CA 90036

☒    Service information continued on attached page

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL**
Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) _____, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.   Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge <u>will be completed</u> no later than 24 hours after the document is filed.

☐    Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| June 19, 2015 | Michael R. Totaro | /s/ Michael R. Totaro |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |